UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| CASH AMERICA ADVANCE, INC., f/k/a | § | |
| CASH AMERICA INTERNATIONAL, | § | |
| INC., d/b/a CASH AMERICA PAWN, | § | |
| | § | |
| Defendant/Appellant, | § | |
| | § | CIVIL NO. M-07-250 |
| VS. | § | (BANKRUPTCY NO. 01-23670) |
| | § | (ADVERSARY NO. 05-7028-M) |
| JOSE G. PRADO, | § | |
| | | |
| Plaintiff/Appellee. | | |

**<u>ORDER AFFIRMING BANKRUPTCY COURT'S FINAL JUDGMENT</u>**

**I.     Introduction**

Now before the Court is Appellant Cash America's appeal of the Final Judgment

entered by the U.S. Bankruptcy Court, Southern District of Texas, on July 10, 2007 in the

above-referenced adversary proceeding.[1]  After a trial on the merits on May 21, 2007, the

Bankruptcy Court awarded Appellee Jose G. Prado ("Prado"), Plaintiff in the adversary

proceeding, the amount of $3,255.00 plus pre-judgment and post-judgment interest.

(Doc. 11 at p. 143; Doc. 16).  The Bankruptcy Court further ruled at the conclusion of the

trial that its Memorandum Opinion issued on March 31, 2006 would be incorporated into

the Court's conclusions of law at the trial.  (Doc. 2, Ex. 12 (Adversary Doc. 12); Doc. 11

at pp. 138-43).  Appellant Cash America Advance, Inc. ("Cash America"), Defendant in

the adversary proceeding, now challenges the conclusions of law upon which the

Bankruptcy Court based its Final Judgment.  Both parties agree that the appeal is limited

to whether the Bankruptcy Court erred in finding that the automatic stay provisions of 11

---

[1]  Although the record indicates that Appellee filed a cross-appeal, counsel for Appellee stated at
a hearing before this Court on February 15, 2008 that he has since withdrawn the appeal.  (Doc.
1; *see also* Doc. 13 (agreeing that appeal is limited to issues of law raised by Appellant)).

U.S.C. § 362(a) precluded Cash America from forfeiting Prado's unredeemed pawned merchandise, and that Cash America violated such provisions.  (Docs. 6, 13).

## II.       Standard of Review

In reviewing the findings of a bankruptcy court, the district court acts in an appellate capacity.  *In re Perry*, 345 F.3d 303, 308 (5th Cir. 2003).  The court reviews the bankruptcy court's conclusions of law and mixed law and fact questions *de novo* whereas it may disregard findings of fact only if they are clearly erroneous.  *Id.* at 309; *In re Bradley*, 501 F.3d 421, 428 (5th Cir. 2007); FED. R. BANKR. P. 8013.  On appeal, the district court "may affirm, modify or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."  FED. R. BANKR. P. 8013.

## III.      Factual and Procedural Background

The relevant facts are largely undisputed.  From June 1998 through July 13, 2001, Prado pledged various items of merchandise, including jewelry, camera equipment, and musical instruments, to Cash America to secure loans made by Cash America.  (Docs. 6, 13; Doc. 11 at pp. 6-7, 21, 77-88).  Prado pawned these items at Cash America's store in McAllen, Texas.  *Id.*  For each item pawned, Cash America issued a pawn ticket to Prado reflecting the terms of the loan agreement between the parties.  (Doc. 11 at pp. 67-69).  Each ticket provided for a statutory maturity date one month after the date of the agreement, with an additional statutory 60-day grace period thereafter.  (Doc. 6; Doc. 11 at pp. 69-70).

A Cash America customer has the following options available to him for making payments on a pawn ticket: (1) pay the full amount due under the agreement, including interest, which allows the customer to redeem the pawned merchandise; (2) pay all

interest due under the agreement, which renews the agreement and starts the process anew with a new pawn ticket, new maturity date, and new grace period; or (3) pay a portion of the interest due, which extends the last day of the grace period by the amount of per diem interest payment made.  (Docs. 6, 13; Doc. 11 at pp. 70-71, 89).  If the customer does not redeem the pawned item or renew or extend his pawn ticket, the item becomes eligible to be placed in store inventory.  (Doc. 6; Doc. 11 at pp. 72-75, 90-91). In order to place an item in store inventory, Cash America changes the item's status from "loan status" to "inventory status" in the store computer.  (Doc. 6; Doc. 11 at pp. 74-75, 90-91).

In the present case, Prado repeatedly extended the last day of the grace period on each of the pawn tickets at issue in this case.  (Docs. 6, 13; Doc. 11 at pp. 9, 11, 89-90). On November 1, 2001, he filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. § 101 et. seq.  (Docs. 6, 13; Doc. 2, Ex. 21).  On November 20, 2001, Prado paid four days of interest on each pawn ticket, thus extending the grace period on each until November 24, 2001.  (Docs. 6, 13; Doc. 11 at p. 90).  Prado did not further extend or renew the pawn tickets, nor did he redeem the merchandise by paying the various amounts due.  (Doc. 6; Doc. 11 at pp. 9-10).[2]  Under advisement that Prado had filed bankruptcy, Cash America pulled the merchandise and secured it in a back room of the store on or about November 25, 2001.  (Doc. 6; Doc. 11 at pp. 90-92). Pursuant to the advice of Cash America's legal department, Cash America held the

---

[2]  Prado contends that he stopped extending the grace period, as had been his practice, only because an Assistant Manager at Cash America's store in McAllen told him he did not have to make any more payments.  (Doc. 13; Doc. 11 at p. 10).  Prado asserts that the Assistant Manager informed him that his merchandise would remain "safe" because he had filed bankruptcy.  *Id.* Prado points to these alleged representations as alternate grounds for affirming the Bankruptcy Court's Final Judgment.  (Doc. 13).  However, like the Bankruptcy Court, this Court has no need to consider the reasons why Prado ceased extending the grace period.

merchandise in the secure location for at least 60 days after the last day of grace.  (Doc. 6; Doc. 11 at pp. 94-95).  Cash America placed the merchandise in store inventory sometime after January 25, 2002 and sold the first of the items on February 2, 2002. (Docs. 6, 13; Doc. 11 at pp. 14, 95).

Prado claims that when he became aware that Cash America was selling his merchandise, he sought financing in order to redeem the merchandise from Cash America.  (Doc. 13; Doc. 2, Ex. 1 (Adversary Doc. 1); Doc. 11 at pp. 16-17).  On May 21, 2002, the Bankruptcy Court granted Prado's motion to incur debt and authorized him to borrow approximately $12,500.00 from his brother to pay Cash America.  (Doc. 13; Doc. 2, Ex. 1 (Adversary Doc. 1); Doc. 2, Ex. 12 (Adversary Doc. 12)).  Prado paid Cash America for the property that remained at its store but was unable to pay for and receive the items that Cash America had sold.  (Docs. 6, 13; Doc. 11 at p. 17).  These pawned items are the subject of the instant adversary proceeding, which commenced on October 31, 2005.  (Docs. 6, 13; Doc. 2, Ex. 1 (Adversary Doc. 1); Doc. 2, Ex. 20).[3]  In his Original Petition, Prado alleged that Cash America had violated the automatic stay provisions of the U.S. Bankruptcy Code set forth in 11 U.S.C. § 362 by selling the items

---

[3]   In fact, Prado filed three adversary proceedings against Cash America in the underlying bankruptcy action, all related to the pawn transactions at issue.  The record indicates that Prado filed the first adversary proceeding on February 21, 2003, which proceeding was voluntarily dismissed.  (Doc. 2, Ex. 12 (Adversary Doc. 12); Doc. 2, Ex. 21; Doc. 2, Ex. 23 (Bankr. Doc. 55)).  On October 18, 2004, he filed a second adversary proceeding that was dismissed without prejudice for insufficient service.  (Doc. 2, Ex. 12 (Adversary Doc. 12); Doc. 2, Ex. 21; Doc. 2, Ex. 25 (Bankr. Doc. 95)).  The Bankruptcy Court dismissed Prado's underlying bankruptcy action for the second time on December 16, 2004.  (Doc. 2, Ex. 12 (Adversary Doc. 12); Doc. 2, Ex. 21; Doc. 2, Ex. 24 (Bankr. Doc. 69); Doc. 2, Ex. 26 (Bankr. Doc. 96)).  Although Prado filed the third adversary proceeding subsequent to this date, the Bankruptcy Court determined in its March 31, 2006 Memorandum Opinion that it nonetheless had jurisdiction to consider whether Cash America violated the automatic stay provisions.  (Doc. 2, Ex. 12 (Adversary Doc. 12)).  Neither party challenges the Court's exercise of jurisdiction.

after the filing of his bankruptcy petition.  (Doc. 2, Ex. 1 (Adversary Doc. 1)).  He sought

damages, sanctions, and attorney's fees in connection with these alleged violations.  *Id.*

**IV.    Analysis**

**A.    Bankruptcy Court's Memorandum Opinion**

In its Memorandum Opinion issued on March 31, 2006, the Bankruptcy Court

determined that Prado had a "colorable basis" for the claims upon which he later

prevailed at trial.  (Doc. 2, Ex. 12 (Adversary Doc. 12) at pp. 1, 14).  The "principal

issue" determined by the Court in that opinion was "whether the period in which [Prado]

may recover the collateral is stayed by [11 U.S.C.] § 362(a) or only extended for a

limited period as provided in [11 U.S.C.] 108(b)."  *Id.* at p. 3.  Section 362(a), which

contains the automatic stay provisions, provides that the filing of a chapter 13 petition

operates as a stay of:

> (3)    any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> (4)    any act to create, perfect, or enforce any lien against property of the estate; [and]
> (5)    any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title….

*Id.* at pp. 3-4 (quoting 11 U.S.C. § 362(a)).

The Bankruptcy Court recognized that 11 U.S.C. § 541(a) defines "property of the

estate" as "all legal or equitable interests of the debtor in property as of the

commencement of the case."  *Id.* at p. 4 (quoting 11 U.S.C. § 541(a)).  Also recognizing

that state law creates and determines property rights in bankruptcy proceedings, the Court

then turned to the provisions of the Texas Pawnshop Act, as codified in the Texas

Finance Code, to clarify the nature of Prado's property rights in his pawned merchandise.

*Id.* at p. 4 (citing *Butner v. United States*, 440 U.S. 48, 55 (1979); TEX. FIN. CODE § 371.001, et seq.)).   The version of section 371.169(c) of the Texas Finance Code applicable to the pawn transactions at issue provides that "[p]ledged goods not redeemed on or before the 60th day after the original maturity date *may*, at the option of the pawnbroker, be forfeited to the pawnbroker."   *Id.* at pp. 4-5 (quoting TEX. FIN. CODE § 371.169(c)(1997)(amended 2001)(emphasis added by Bankruptcy Court)).   According to the Bankruptcy Court, this language indicates that the forfeiture of pawned property is not automatic upon the expiration of the 60-day grace period.   *Id.* at p. 5.   Rather, Texas law requires the following affirmative act by the pawnshop before the ownership interest transfers from the customer to the pawnshop:

> Documentation of the date that pledged goods have been forfeited and have become the property of the pawnshop must be made in the numerical pawn ticket file or in the electronic records.   When the option is exercised to take pledged goods as the pawnshop's property, the property is not eligible to be returned to pledged goods status until another disposition of the property is made (e.g., sale, layaway).   If goods have not been taken into inventory and documented, the pawn transaction is still considered an open pawn transaction even if the grace period has expired.   The pledged goods on any open pawn transaction may be redeemed by payment of the amount financed and pawn service charges accrued to the actual date of redemption.

*Id.* (quoting 7 TEX. ADMIN. CODE § 85.414 (2000)).

In other words, after the expiration of the 60-day statutory grace period, a customer's right to pay the debt and recover the pawned goods remains open until the pawnshop documents the date of forfeiture in the prescribed manner.   *Id.* at p. 6.

The Bankruptcy Court then considered the application of 11 U.S.C. § 108(b) to the scenario at hand.   *Id.* at p. 7.   That section provides as follows:

> (b)      Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual

> protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—
>
> (1)    the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2)    60 days after the order for relief.

*Id.* (quoting 11 U.S.C. §108(b)).

The Bankruptcy Court interpreted this section to mean that "where the applicable recovery period remains open upon the filing of a bankruptcy petition, § 108(b) extends the recovery period for either 60 days from the filing of bankruptcy or until the end of the state law recovery period, whichever is longer."  *Id.* at p. 7.  The Court adopted the view of a majority of courts that section 362(a), the provision that tolls actions taken against the debtor, does not toll the running of state statutory redemption periods; rather, those periods are extended only to the extent allowed by section 108(b), the more specific provision.  *Id.* at pp. 7-8.

Cash America argued to the Bankruptcy Court, as it does now, that assuming that Prado's right of redemption remained open when he filed bankruptcy on November 1, 2001, section 108(b) required him to redeem the property within 60 days of filing, given that the last day of grace on each of the pawn tickets occurred before the expiration of those 60 days.  *Id.* at pp. 8-9; (Doc. 6).  In other words, "60 days after the order for relief" was the "later" date contemplated by section 108(b).  *See id.*  However, the Court rejected this argument.  (Doc. 2, Ex. 12 (Adversary Doc. 12) at pp. 9-14).  The Court explained that a debtor retains the right to pay a debt and recover pledged collateral until the pawnshop takes the specific actions required by the Texas Administrative Code to enforce its lien.  *Id.* (citing 7 TEX. ADMIN. CODE § 85.414 (2000)).  Although section

362(a) does not toll the running of the state statutory redemption period, it stays any act to exercise control over property of the estate or to create, perfect, or enforce any lien against property of the estate.  *Id.* (citing 11 U.S.C. § 362(a)(3)-(4)).  The Court reasoned that because Texas law provides that pledged goods are the debtor's property until the pawnshop enforces its lien, and section 362(a) precludes the enforcement of a lien, a debtor's right to pay the debt and recover the collateral exists indefinitely until (i) relief from the stay is granted or (ii) the stay terminates by operation of law.  *Id.*  In other words, "60 days after the order for relief" is not the later date under section 108(b).  The Court therefore concluded that "[i]f [Prado's] right to recover the pledged goods existed under Texas law when he filed his bankruptcy petition, then § 362(a) precludes Cash America from terminating [Prado's] interest in the Property," and thus Prado had made a "colorable claim that Cash America violated 362(a)."  *Id.* at p. 14.

**B.      Bankruptcy Court's Ruling and Final Judgment**

In the Bankruptcy Court's ruling at the conclusion of the trial, the Court reaffirmed its conclusions of law in the Memorandum Opinion and found that Cash America had in fact violated the automatic stay by placing the merchandise at issue in its store inventory.  (Doc. 11 at pp. 138-39).  The Court explained that the "real issue[s]" for the trial were the amount of damages caused by this violation and whether Cash America had acted in such a way so as to justify an award of punitive damages.  *Id.* at p. 139. Finding credible the testimony that Cash America had made available goods of reasonable equivalent value and type to Prado, and that "they no longer proceed in bankruptcy cases in a manner that violates the stay," the Court declined to award punitive

damages. *Id.* at pp. 139-41.[4]  In its Final Judgment, the Court awarded Prado damages in the amount of $3,255.00, plus interest, "[f]or the reasons stated on the record."  (Doc. 16); *see also id.* at p. 143.[5]

## C.   Review of Bankruptcy Court's Conclusions of Law

The Court now turns to whether the Bankruptcy Court erred, as a matter of law, in finding that the automatic stay provisions of section 362(a) precluded Cash America from placing Prado's merchandise in its store inventory, and that Cash America violated such provisions.  Given that the determinative facts are undisputed, the Court's review is *de novo*.

Assuming Prado had not filed bankruptcy, Texas law clearly establishes the date on which Cash America was permitted to forfeit Prado's unredeemed pawned merchandise.  Pursuant to Texas law, each of Prado's pawn tickets had an original statutory maturity date of one month, followed by a 60-day statutory grace period.  TEX. FIN. CODE § 371.160 (1997)(absent written agreement to the contrary, pawnbroker may not enter pawn transaction that has maturity date later than one month); TEX. FIN. CODE § 371.169 (1997)(amended 2001)(prescribing 60-day grace period).[6]  Cash America was required to hold the pawned merchandise not redeemed by Prado until the end of this grace period.  TEX. FIN. CODE § 371.169(a)(1997)(amended 2001).  Prado extended the grace period until November 24, 2001.  On or before this date, Prado had the option, but was not required, to redeem the pledged goods.  TEX. FIN. CODE §

---

[4]  The Court also declined to award attorney's fees. (Doc. 11 at p. 143).
[5]  This amount was equal to the difference between the value of the missing goods and the debt owed, plus the amount of sales tax paid by Prado that should not have been paid. (Doc. 11 at pp. 141-43).
[6]  Section 371.169 of the Texas Finance Code was amended, effective September 1, 2001 and thus after the issuance of the pawn tickets in question, to reduce the grace period from 60 days to 30 days.

371.169(b)(1997)(amended 2001)(on or before date grace period ends, pledgor "may redeem the pledged goods"); TEX. FIN. CODE § 371.170 (1997)(pledgor not obligated to redeem pledged goods or make payment on pawn transaction).  He did not.  Upon the expiration of the grace period, Cash America then had the option, but was not required, to forfeit the unredeemed goods.  TEX. FIN. CODE § 371.169(c)(1997)(amended 2001)(pledged goods not redeemed within grace period "may, at the option of the pawnbroker, be forfeited to the pawnbroker").  Until Cash America documented the date of forfeiture of the pledged goods in its numerical pawn ticket file or in its electronic records, the pawn transactions remained "open" and Prado had the continued option to redeem the pawned merchandise, regardless of whether the grace period had expired.  7 TEX. ADMIN. CODE § 85.414 (2000).  Cash America changed the status of the merchandise from "loan status" to "inventory status" in its computer, thus documenting the date of forfeiture in the manner prescribed and terminating Prado's option to redeem, sometime after January 25, 2002.

The Court must now determine the effect of Prado's bankruptcy filing on the above scenario.  Prado filed his chapter 13 petition on November 1, 2001, before the November 24, 2001 expiration of the grace period on each of his pawn tickets.  As explained by the Bankruptcy Court, section 362(a) operates as a stay of certain post-petition actions that affect "property of the estate," defined as "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 362(a); 11 U.S.C. § 541(a).  At the time he filed his bankruptcy petition, Prado had the option to redeem his pawned merchandise because the grace period had not yet expired. It was this interest in the merchandise, rather than the merchandise itself, that became the

property of the estate.  *See In re Lewis*, 137 F.3d 1280, 1285 (11th Cir. 1998)(bankruptcy estate's only interest in repossessed automobile, a "bare right of redemption," failed to render automobile itself "property of the estate" under section 541(a)(1)); *Matter of Tynan*, 773 F.2d 177, 179 (7th Cir. 1985)(only property interest debtors had in real estate after foreclosure sale was right of redemption).

As did the Bankruptcy Court, this Court accepts the majority view that section 362(a) does not toll state statutory redemption periods such as those prescribed by the Texas Pawnshop Act.  Rather, section 108(b) provides the only extension for such periods.  *E.g.*, *Cash Am. Pawn, L.P. v. Murph*, 209 B.R. 419, 422-23 (E.D. Tex. 1997)(listing cases and summarizing majority view); *In re Jackson*, 133 B.R. 541, 545-46 (Bankr. W.D. Okla. 1991)(same).  Courts have articulated several reasons for this holding.  Some have cautioned that allowing section 362(a) to prevail over section 108(b) would enlarge property rights granted and circumscribed by state law, thus rendering the pertinent time allotments of section 108(b) unnecessary.  *Id.* (citing *Johnson v. First Nat'l Bank*, 719 F.2d 270 (8th Cir. 1983), *cert. denied*, 465 U.S. 1012 (1984); *Counties Contracting & Constr. Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054 (3d Cir. 1988)).  Others have pointed to the general rule that specific statutory references control over those which are more general.  *Id.* (citing *In re Farmer*, 81 B.R. 857, 861 (Bankr. E.D. Pa. 1988)).  Since section 108(b) specifically addresses redemption periods, it therefore controls over the more general provisions of section 362(a).  *Id.*  Finally, some courts have found that the running of a statutory right of redemption is not the kind of "act" that triggers the application of section 362(a).  *Jackson*, 133 B.R. at 545 (citing *Tynan*, *supra*; *In re Petersen*, 42 B.R. 39, 41 (Bankr. D. Or. 1984)).  In other words, section 362(a) only

protects against "affirmative" acts taken subsequent to the filing of a bankruptcy petition. *In re Canney*, 284 F.3d 362, 372 (2d Cir. 2002); *Johnson*, 719 F.2d at 276.  It does not, therefore, protect against the automatic expiration of a right of redemption upon the passage of a specified time period.  *Canney*, 284 F.3d at 372 (legal and equitable title vested automatically in mortgagee when redemption period extended by section 108(b) lapsed without redemption); *Johnson*, 719 F.2d at 278 (same).   Courts have also recognized that acts that are "ministerial," *i.e.*, that are merely clerical in nature and do not in themselves affect parties' redemption rights, are not "affirmative" acts that trigger the automatic stay. *In re Connors*, 497 F.3d 314, 320-21 (3d Cir. 2007)(quoting *In re Ziyambe*, 200 B.R. 790, 796 (Bankr. D. N.J. 1996))(delivery of deed after foreclosure sale is "'ministerial act, routinely performed, which does not affect the redemption rights of the parties'"); *In re Carver*, 828 F.2d 463, 463-64 (8th Cir. 1987)("routine certification" of non-redemption by clerk of court, where debtor failed to comply with contract for deed within redemption period, was not affirmative act required to complete running of redemption period but was instead ministerial act not stayed by 362(a)); *see also Roberts v. C.I.R.*, 175 F.3d 889, 897 (11th Cir. 1999)(describing ministerial acts as those which "entail no deliberation, discretion, or judicial involvement"); BLACK'S LAW DICTIONARY 26 (8th ed. 2004)(defining "ministerial act" as "[a]n act performed without the independent exercise of discretion or judgment").

Although the Bankruptcy Court adopted the majority view that section 108(b) supplies the only available extension of statutory redemption periods, it nonetheless determined that section 362(a) proscribed Cash America's forfeiture of the merchandise in question.  The Court supported this "back door" application of the automatic stay by

reasoning that under Texas law, the "later" date under section 108(b) was the date Cash America exercised its option to take the merchandise at issue as its property by documenting the date of forfeiture. The Court characterized this documentation as the kind of "affirmative" act that triggers the application of section 362(a). Because, on the date of documentation, Prado retained a legal or equitable interest in the pawned property, section 362(a) thus prevented Cash America from taking the final act to terminate that interest.

To this Court's knowledge, only one other court, the district court in *Murph*, *supra*, has considered the effect of the relevant provision of the Texas Administrative Code on the scenario at hand. In that case, the appellant, Cash America, issued pawn tickets to the Murphs that provided for a maturity date of 30 days from the date of the original pawn with a 60-day grace period thereafter. *Murph*, 209 B.R. at 420. On the date the Murphs filed their chapter 13 petition for bankruptcy, the 60-day grace period had not yet expired. *Id.* at 421. The district court noted as follows:

> The bankruptcy court cited a regulation promulgated by the Consumer Credit Commissioner who was given authority by the Texas Legislature to 'make regulations necessary for the enforcement of this [Texas Pawnbroker] Act and consistent with all its provisions.' TEX. REV. CIV. STAT. art. 5069-51.09(b)(Vernon 1987). The Consumer Credit Commission promulgated regulations dealing with the specific actions that must be taken by the pawnbroker when he exercises his option to take pledged goods as his property. He must make a notation of the action and the date of the action on the fourth part of the pawn ticket or in the electronic records of the loan. The regulation goes on to state that if the notation has not been made, the loan is considered open even if the grace period has expired. TEX. ADMIN. CODE ANN. § 85.21(E).

> The bankruptcy court found that this regulation definitively establishes the time of ownership transfer. It further held that since the grace period for each transaction expired after the Petition Date, Cash America, having received notice of the bankruptcy filing, was foreclosed from taking the final action to gain ownership of the property because such action would be considered action to enforce a lien. 11 U.S.C. § 362(a)(5).

*Id.* (footnote omitted).

Because the Murphs filed their petition before the 60-day grace period expired, the district court agreed with the bankruptcy court that the Murphs had a legal or equitable interest in the property on the date of filing, and that this interest became part of the estate.  *Id.* (citing 11 U.S.C. § 541(a)(1)).  Upon adopting the majority position that section 362(a) does not toll the running of state statutory redemption periods, the court then determined that "when...the bankruptcy is filed before the expiration of the applicable state redemption period, § 108(b) extends the redemption period for 60 days from the commencement of the bankruptcy proceedings."  *Id.* at 423.  The court concluded as follows:

> Thus upon the filing of the bankruptcy petition, Debtors, or the trustee, had 60 days to redeem the property.  Having failed to exercise this right of redemption, full title would vest in Cash America Pawn once it made the applicable notation on its fourth record or electronically recorded the final forfeiture according to the regulations of the Texas Administrative Code.  However when the Debtors failed to exercise the right of redemption within the 60 days extension provided by § 108(b), they no longer had any legal or equitable interest in the collateral and it ceased to be part of the bankruptcy estate.  Appellants, at that point were not subject to the automatic stay provisions of 362(a) as concerns the collateral.  Appellant Cash America was then free to make its notation pursuant to the regulations of the Texas Administrative Code.

*Id.* at 423.

In other words, the court in *Murph* assumed, without sufficient explanation, that section 108(b) gave the Murphs a *maximum* of 60 days within which to redeem the property.  Therefore, upon the expiration of 60 days from the date of the Murphs' petition, their legal or equitable interest in the property automatically terminated and Cash America could then take the "affirmative" act otherwise proscribed by section 362(a).

In its Memorandum Opinion, the Bankruptcy Court found *Murph*'s reasoning inconsistent, given that the district court "describes that Texas law provides that pledged goods are the debtor's property until the pawnshop specifically enforces its lien by documenting the forfeiture," an act prohibited by section 362(a), but "disregards this provision under Texas law to find that upon expiration of 60 days the debtor automatically loses all interest in the property so that 362(a) no longer precludes the pawnshop from taking the final step to enforce its lien."  (Doc. 2, Ex. 12 (Adversary Doc. 12 at n. 10)).  However, the Bankruptcy Court's own determination that section 108(b) supplies the only extension for state statutory redemption periods, but nonetheless incorporates section 362(a) through the operation of Texas law, also appears inconsistent at first glance.  Still, the Court finds that the governing law supports the Bankruptcy Court's holding.  As noted *supra*, the Court accepts that Prado's option to redeem under Texas law remained open until Cash America documented the date of forfeiture in its computer pursuant to the relevant provision of the Texas Administrative Code.   In addition, the Court accepts that this act was "affirmative" and not "ministerial" in nature. Texas law does not *require* a pawnbroker to forfeit goods upon the expiration of the grace period.  Therefore, Cash America was exercising its discretion when it acted to change the status of the goods in its store computer.  It was this act, and not the running of the grace period that terminated Prado's right of redemption.

In light of the above, the Court also must accept the Bankruptcy Court's ultimate holding.  Clearly, section 108(b) extends state statutory redemption periods until the later of 60 days after the filing of a bankruptcy petition or "the end of such period, including any suspension of such period occurring on or after the commencement of the case."

Pursuant to Texas law, the end of Prado's redemption period occurred when Cash America made the discretionary decision to document the date of forfeiture, not when the grace period expired.  Prado therefore had a legal or equitable interest in the merchandise at issue when Cash America changed the status of the goods in its store computer and placed them for sale.  Accordingly, section 362(a) proscribed the affirmative act taken by Cash America to terminate Prado's interest, *i.e.*, his right of redemption.  By placing the items for sale, Cash America violated the automatic stay.[7]

### V.     Conclusion

For the foregoing reasons, the Court hereby **ORDERS** that the Bankruptcy Court's Final Judgment in the above-referenced adversary proceeding is hereby **AFFIRMED**.

SO ORDERED this 29th day of September, 2008, at McAllen, Texas.

_____
Randy Crane
United States District Judge

---

[7]  In reaching this conclusion, the Court has not enlarged property rights granted and circumscribed by Texas law, as Texas law in fact permits an indefinite right of redemption on the part of the debtor in the event the pawnbroker fails to exercise its option to forfeit in the manner prescribed.  Neither does the Court's holding render the provisions of section 108(b) unnecessary or superfluous; rather, it depends upon the specific application of these provisions in the only manner consistent with Texas law.  In sum, the Court's holding does not conflict with its acceptance of the majority view that section 108(b), and not section 362(a), provides the only extension of state statutory redemption periods.